UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **HILDA L. SOLIS,** Secretary of Labor**,**<br>United States Department of Labor,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>**SARAPHINO'S INC., d/b/a SARAPHINO'S**<br>**ITALIAN RESTAURANT** and **RUSHAN**<br>**SINANI**, an individual,<br><br>　　　　　　　Defendants. | Case No.: 09-cv-954<br><br>Hon. J.P. Stadtmueller |

## SECRETARY OF LABOR'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

Plaintiff, **HILDA L. SOLIS**, Secretary of Labor, United States Department of Labor, by her undersigned counsel, hereby submits her memorandum of law in support of "Secretary of Labor's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment," pursuant to Rule 56 Fed.R.Civ.P. for enforcement of the Fair Labor Standards Act of 1938, as Amended, (29 U.S.C. § 201 *et seq*.)(hereinafter "FLSA" or "the Act").

## TABLE OF CONTENTS

Table of Authorities ....................................................................................................... 3

Statement of the Case .................................................................................................... 4

Statement of Issues ........................................................................................................ 5

Argument ....................................................................................................................... 5

　A.　Saraphino's Is an "Enterprise" Within the Meaning of Sections 3(r) and
　　　　3(s)(1)(A) of the Act ........................................................................................ 5

　B.　Defendant Rushan Sinani Is an Individual Employer Under the FLSA. ............... 6

C.  Defendants Admitted That They Did Not Pay Two Employees for Work
  Performed in Their Last Workweeks…………………………………...………8

D. Defendants Violated the Overtime Provisions By Failing to Compensate
  Employees for Hours Worked in Excess of Forty (40) in a Workweek at a
  Rate Not Less Than One and One-Half Times Their Regular Rate of Pay………8

E.  Defendants Admitted to Not Maintaining Required Records in Violation of
  the Act and Regulations... ....................................................................................12

F.  Defendants' Failure to Maintain Hours Worked and Pay Records Results in Their
  Bearing the Burden of Rebutting Inferences From Available Evidence…………14

G.  Plaintiff Is Entitled to Recover an Additional Amount Equal to the
   Unpaid Compensation, as Liquidated Damages. ..................................................15

H.  Defendants Should Be Enjoined From Continuing to Violate the Act .................17

Conclusion ........................................................................................................................17

# TABLE OF AUTHORITIES

**Statutes**
Fair Labor Standards Act of 1938, as Amended, 29 U.S.C. § 201 *et seq*.
Fair Minimum Wage Act of 2007, P.L. No. 110-28, 121 Stat. 189 § 8102
Portal-to-Portal Act of 1947, 29 U.S.C. § 260

**Cases**
Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)
Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1945)
Bankston v. State of Illinois, 60 F.3d 1249, 1254 (7th Cir. 1995)
Barvinchak v. Indiana Reg'l Medical Center, 2007 WL 2903911 (W.D. Pa. 2007)
Biggs v. Wilson, 1 F.3d 1537 (9th Cir. 1993)
Brock v. Big Bear Market No. 3, 825 F.2d 1381 (9th Cir. 1987)
Brooklyn Savings Bank v. O'Neill, 324 U.S. 697 (1945)
Brock v. Seto, 790 F.2d 1446 (9th Cir. 1986)
Brock v. Tony & Susan Alamo Foundation, 842 F.2d 1018 (8th Cir. 1988)
Celotex Corp. v. Catrett, 477 U.S. 317 (1986)
Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962 (6th Cir. 1991)
Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983)
Donovan v. Crisostomo, 689 F.2d 869 (9th Cir. 1982)
Elwell v. University Hospitals Home Care Services, 276 F.3d 832 (6th Cir. 2002)
Fegley v. Higgins, 19 F.3d 1126 (6th Cir. 1994)
Freemon v. Foley, 911 F. Supp. 326 (N.D. Ill. 1995)
Herman v. Palo Group Foster Home, 183 F.3d 468 (6th Cir. 1999)
Martin v. Funtime Inc., 963 F.2d 110 (6th Cir. 1992)
Martin v. Ind. Mich. Power Co., 381 F.3d 574 (6th Cir. 2004)
Martin v. Tony and Susan Alamo Foundation, 952 F.2d 1050 (8th Cir. 1992)
Overnight Motor Co. v. Missel, 316 U.S. 572 (1942)
Reich v. Midwest Body Corp., 843 F.Supp. 1249 (N.D. Ill. 1994)
Riordan v. Kempiners, 831 F.2d 690 (7th Cir. 1987)
Shea v. Galaxie Lumber & Constr. Co., 152 F.3d 729 (7th Cir. 1998)
U.S. Dep't of Labor v. Cole Enterprises, Inc., 62 F.3d 775 (6th Cir. 1995)
Walling v. National Ice and Fuel Corp., 158 F.2d 28 (7th Cir. 1946)
Walton v. United Consumers Club, 786 F.2d 303 (7th Cir. 1986)
Weary v. Cochran, 377 F.3d 522 (6th Cir. 2004)
Wirtz v. Turner, 330 F. 2d 11 (7th Cir. 1964)

**Other**
Fed.R.Civ.P. 56(c) and (e)
29 C.F.R. Part 516
29 C.F.R. § 778.315

## STATEMENT OF THE CASE

On October 2, 2009, the Secretary of Labor filed a complaint, seeking injunctive relief to restrain minimum wage, overtime, record keeping violations of the Fair Labor Standards Act, as Amended (29 U.S.C. § 201 et seq.)(hereinafter "the Act" or the "FLSA") and recover unpaid compensation and an equal amount in liquidated damages under the Act.

In deciding summary judgment motion, a court must view facts "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). The movant may meet its initial burden by "'showing – that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The nonmoving party then must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A "genuine" factual dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Secretary's lawsuit specifically seeks $47,259.56 in unpaid minimum wage and overtime compensation and an equal amount in liquidated damages for kitchen employees. The pleadings, deposition, answers to interrogatories, declarations, and defendants' business records demonstrate that there is no genuine issue as to any material fact related to liability and damages and that the Secretary is entitled to a judgment as a matter of law under Fed.R.Civ.P. 56(c); *see also* Celotex, 477 U.S. at 322. The total amount of damages sought in this summary judgment is $47,259.56. In the event the court finds a dispute regarding damages, the Secretary respectfully requests partial summary judgment related to the issues of liability.

## STATEMENT OF ISSUES

1. Whether the corporate defendant is a covered "enterprise" under the FLSA?

2. Whether the individual defendant, who controls and directs the pay and employment practices of the corporate defendant, is an "employer" within the meaning of section 3(d) of the FLSA?

3. Whether defendants failed to pay two employees the minimum wage when they were not paid for their last two weeks of work?

4. Whether defendants failed to pay kitchen employees the overtime premium in violation of section 7 of the FLSA?

5. Whether defendants failed to maintain required records in violation of section 11(c) of the FLSA and 29 C.F.R. Part 516?

6. Whether the Secretary accurately calculated the amounts of back wages due?

7. Whether liquidated damages in an amount equal to the back wages are appropriate under section 16(c) of the FLSA?

8. Whether a prospective injunction is an appropriate remedy under section 17 of the FLSA for the defendants' violations of the Act?

## ARGUMENT

### A. Saraphino's Is an "Enterprise" Within the Meaning of Sections 3(r) and 3(s)(1)(A) of the Act.

The operations conducted at Saraphino's Italian Restaurant ("Saraphino's") are related activities and are performed for a common business purpose through unified operations, as well as the common control of the individual defendant who owns and manages the company. The FLSA defines "enterprise" as "related activities performed (either through unified operation or common control) by any person or persons for a common

business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or organizational units…." 29 U.S.C. § 203(r)(1). Section 3(s) of the Act states an "enterprise engaged in commerce" means "an enterprise that has employees engaged in commerce or …that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." 29 U.S.C. § 203(s)(1). A covered enterprise is one that has an annual gross volume of sales made or business done of not less than $500,000. *Id*. Saraphino's is an Italian-style restaurant, serving American and Italian cuisine, pizza and variety of other foods, under the ownership and direction of Rushan Sinani. *Prop. Fact Nos. 5, 8 and 9.[1]* Saraphino's, at all times relevant, had an annual dollar volume of sales in excess of $500,000 and was engaged in commerce. *Prop. Fact No. 4.* The Wisconsin restaurant ordered pizza boxes and other goods from Battaglia, located in Illinois and served Italian wine and beer. *Prop. Fact No. 7*. Thus, two or more employees handled goods or materials that have moved in interstate commerce; Saraphino's is a covered "enterprise" subject to the requirements of the FLSA.

### B. Defendant, Rushan Sinani, Is an Individual Employer Within the Meaning of the FLSA.

Rushan Sinani, President and owner of the corporate defendant, is an individual employer within the meaning of section 3(d) of the Act. The FLSA broadly defines "employer" to "include any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Employer" status is a question of law under the FLSA. <u>Karr v. Strong Detective Agency, Inc.</u>, 787 F.2d 1205, 1206 (7th Cir. 1985). "The overwhelming authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the

---

[1] All facts cited herein refer to the "Secretary of Labor's Statement of Proposed Material Facts" filed herewith.

6

corporation jointly and severally liable under the FLSA for unpaid wages." Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983); *see also* Herman v. RSR Security Services, Ltd., 172 F.3d 132, 141 (2d Cir. 1999)(finding a 50 percent shareholder and chairman with authority over management and oversight of corporate affairs an employer under the FLSA); Freemon v. Foley, 911 F. Supp. 326, 331 (N.D. Ill. 1995)(exclusive control over day-to-day affairs of business not required to find an individual a liable "employer" if he possesses control "over the aspect of employment alleged to have been violated."). An individual with supervisory authority over the employee(s) and responsible "in whole or in part for the alleged violation" may be an employer within the meaning of section 3(d) of the Act. Riordan v. Kempiners, 831 F.2d 690, 694 (7th Cir. 1987).

A chief corporate officer with significant ownership interest and control of day-to-day functions of the business, including wages, is personally liable under the FLSA. Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 966 (6th Cir. 1991). In Elliott Travel, the individuals were found liable as "employers" due to their positions, ownership interest, and control of significant aspects of the business, including setting salaries and making hiring decisions. Elliott Travel, 942 F.2d at 966. Sinani is the owner and President of the corporation, who exercises day-to-day control and management, including the employment and pay practices. *Prop. Fact Nos. 5, 9.* Sinani's ownership interest, significant control of business operations, and decisions relating to hiring and firing, setting pay rates, paying cash each workweek, scheduling work, and supervising time cards establish him as an individual employer within the meaning of section 3(d). *Prop. Fact Nos. 11, 12, 17, 26 and 81.* Sinani is in charge of the day-to-day activities of the corporation, including, but not limited to employment decisions and direct

7

supervision of workers. Therefore, Sinani is an "employer" within the meaning of the Act.

### C. Defendants Admitted That They Did Not Pay Two Employees for Work Performed During Their Last Workweeks.

Defendants' failure to pay any wages to two employees violated section 6 of the Act. Section 6(a) of the FLSA, 29 U.S.C. § 206(a), requires an employer to pay not less than the Federal minimum wage rate[2] for each hour worked by an employee. Minimum wage is due on payday. Biggs v. Wilson, 1 F.3d 1537, 1540 (9th Cir. 1993). "Holding that the FLSA is violated unless the minimum wage is paid on the employee's regular payday also comports with such case law as there is." *Id*. at 1541. It is undisputed that defendants failed to pay any wages to two employees for their last two-plus weeks of employment. *Prop. Fact Nos. 66, 67, 73, 74, 77.* Defendants' failure to pay employees the statutory wages due in the amount of $125.78,[3] resulted in violations of section 6 of the Act. *Prop. Fact No. 93.*

### D. Defendants Violated the Overtime Provisions By Failing to Compensate Employees for Hours Worked in Excess of Forty (40) in a Workweek at a Rate Not Less Than One and One-Half Times Their Regular Rate of Pay.

Employers are prohibited from employing non-exempt employees for more than 40 hours in a workweek, unless such employees are compensated for their employment in excess of 40 "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). Overtime violations were properly determined for defendants' kitchen employees, who were not paid the overtime premium for hours over 40 in a workweek. During the investigation period, defendants knew that employers were

---

[2] As amended by the Fair Minimum Wage Act of 2007, P.L. No. 110-28, 121 Stat. 189, § 8102, raising the Federal minimum wage rate to $5.85 per hour effective July 24, 2007, to $6.55 per hour effective July 24, 2008, and to $7.25 on July 24, 2009. The Wisconsin minimum wage rate was $6.50 per hour from June 1, 2006 to July 23, 2009.
[3] This back wage amount for the period during which no wages were paid for work performed includes the straight-time wages due for hours under 40 in overtime workweeks.

8
Case 2:09-cv-00954-JPS    Filed 12/29/10    Page 8 of 18    Document 30

required to pay one and one-half times the regular rate for hours over 40 in a workweek. *Prop. Fact No. 98.* Defendants treated kitchen employees differently from their wait staff and salaried employees. *Prop. Fact Nos. 18, 19, 97.*

The employees listed on exhibit A of the complaint were paid in cash at their regular hourly rate for all hours worked. *Prop. Fact Nos. 26, 37, 43, 75, 76,* and all worked 45 hours or more per week, *Prop. Fact Nos. 31—35, 84.* Defendants intentionally did not maintain records of their pay or hours worked. *Prop. Fact Nos. 94—96, 17, 22, 26, 27.* Although defendants claim to have paid the overtime premium for hours in excess of 40 in a workweek, they have neither records nor knowledge of the hours worked or compensation paid each workweek for kitchen employees. *Prop. Fact Nos. 28, 29, 22—25.* While the five kitchen employees consistently stated that they were worked six or seven days a week, more than 40 hours in a workweek, they were not paid any extra amount for their overtime hours. *Prop. Fact Nos. 26, 37, 43, 75, 76.* Defendants did admit that all of the kitchen employees worked 45 hours or more per week, *Prop. Fact Nos. 31—35,* but dispute their average total hours worked and some of the rates paid, *Prop. Fact Nos. 31--36.*

There is no "genuine" dispute of material fact because a review of defendants' contradictory responses to discovery, as well as their conduct during the investigation, demonstrates significant credibility problems. Defendants repeatedly have averred that there are no records and no one within the corporation with knowledge of the total hours worked each workweek for the kitchen employees paid cash. *Prop. Fact Nos. 22—24, 28, 29.* Plaintiff specifically requested facts related to the hourly rate or salary paid and hours worked for the kitchen employees. In defendants' initial interrogatory answer, they stated "previously provided to investigator, document unavailable." *Prop. Fact Nos. 28.* As

9

recently as December 27, 2010, defendants have explained that the oft-cited "previously provided to investigator, document unavailable" means it was given to the investigator and no copy was kept nor can it be found. *Prop. Fact Nos. 28.* Under oath, defendants stated that there are no records and no person within the corporation with knowledge of the pay or hours worked each workweek, *Prop. Fact Nos. 22--24,* but claimed that all of the kitchen workers were paid minimum wage[4] and that the cooks were not paid more than the other kitchen employees, *Prop. Fact No. 25.* Again, in their Supplemental Answers to interrogatory no. 5, defendants stated that it is "likewise impossible to swear too since there are no actual records in existence any longer." *Prop. Fact No. 29.* Despite all their prior assertions, in their recent second supplemental interrogatory answer no. 5(b), defendants state an average total number of hours for each employee and total hours each week. *Prop. Fact Nos. 30--35.* Furthermore, they now state that Martin Medina was paid a total of $682 each week and Patricio Zapien paid $440 each week; 5(c), while no additional documents has been produced. *Prop. Fact Nos. 31, 32.* Martin Medina, who appeared on defendants' pay register for a few weeks, is shown to have been paid at a rate of $7.00 per hour, which the time card also notes. *Prop. Fact Nos. 18, 45, 84.* Medina stated that he was paid $11 per hour, which specifically was not disputed during the investigation. *Prop. Fact Nos. 42, 91.* Furthermore, defendants, under oath, stated that all the kitchen employees were paid the minimum wage, including the cooks (Medina and Patricio); the cooks were not paid more than the dishwashers. *Prop. Fact Nos. 25.*

During the Wage and Hour investigation, Sinani admitted to the investigator that he did not pay overtime to cash employees, *Prop. Fact No. 84*, yet after this action was filed, he

---

[4] Neither the Federal of state minimum wage was ever the $6.00 per hour paid by defendants; see footnote 2.

claims to pay overtime. When the investigator requested the hourly rates of each kitchen employee, he was told $7.00 for Martin Medina, Luis Zapien $8.00, and Patricio Zapien a flat rate of $350 per week. *Prop. Fact No. 84.* Now, defendants claim that Patricio Zapien was paid $440 per week and Martin Medina paid $682 a week, neither of which equal the amounts previously told by defendants to the investigator. *Prop. Fact No. 31, 32, 84.* Most compelling is the fact that the flat amounts paid to Medina and Patricio submitted by defendants divided by the hours worked by the hours given by the two employees equal the exact hourly rate that the employees have asserted. For example, defendants state that Medina was paid $682 each week, divided by the 62 hours a week given by Medina, *Prop. Fact No. 41,* equals exactly $11 per hour. Patricio's flat rate of $440 per week divided by the 44 hours Patricio stated, *Prop. Fact No. 49,* equals the $10 per hour that he provided. Thus providing further confirmation not only of the employees' average hours worked and regular rates but also that defendants did not pay the required overtime premium.

Furthermore, Sinani told Manuel to be "Martin" for the investigator to interview. *Prop. Fact Nos. 44, 82.* Shortly thereafter, Sinani admitted to both the investigator and the real Martin that he had told Manuel to be Martin. *Prop. Fact Nos. 44, 82.* Sinani also instructed several of the employees not to punch their time cards with more than 40 hours in a week. *Prop. Fact Nos. 43, 45, 52, 59.* Defendants' own pay records confirm Martin Medina's statement that he was told not to record more than 20 hours a week. *Prop. Fact Nos. 18, 20, 45.* Medina appears a few weeks on the payroll register after the investigation started on July 17, 2008, *Prop. Fact No. 18*, for workweek ending July 27, 2008, Medina's total hours are 18 and 12 hours workweek ending August 3, 2008. *Prop. Fact No. 18.* Medina was given a check for his hours appearing on the payroll (under 40) and the

11

remaining hours in cash. *Prop. Fact No. 45.* Despite continuing to work for defendants until May 2009, *Prop. Fact No. 39,* he no longer appeared on the pay register after August 12, 2008*, Prop. Fact No. 18.* Defendants cannot establish a "genuine" issue of material fact based on no records, no memory, no knowledge, denials of prior admissions, and contradictory assertions.

The Secretary properly calculated the overtime pay for all hours by including straight time pay due in overtime workweeks. Courts have agreed with the DOL's Interpretation that the regular rate must be paid for all straight time hours in an overtime workweek to satisfy the overtime provision. *See* Reich v. Midwest Body Corp., 843 F.Supp. 1249, 1252 (N.D. Ill. 1994); Donovan v. Crisostomo, 689 F.2d 869, 876 (9th Cir. 1982); Barvinchak v. Indiana Reg'l Medical Center, 2007 WL 2903911 (W.D. Pa. 2007).

> In determining the number of hours for which overtime compensation is due, all hours worked (see § 778.223) by an employee for an employer in a particular workweek must be counted. Overtime compensation, at a rate less than one and one-half times the regular rate of pay, must be paid for each hour worked in the workweek in excess of the applicable maximum hours standard. **This extra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid.**

29 C.F.R. § 778.315 (emphasis added). Defendants' failure to pay employees the overtime premium violated section 7 of the Act and a total of $23,504.00 in unpaid overtime compensation is due employees as a result. *Prop. Fact No. 92.*

### E. **Defendants Admitted to Not Maintaining Required Time and Pay Records in Violation of the Act and Regulations.**

Defendants admitted that they did not maintain records of kitchen employees' compensation and hours worked each workweek, in accordance with section 11(c) of the FLSA and 29 C.F.R. Part 516, despite doing so for their wait staff and salaried employees. *Prop. Fact No. 97.* Section 11(c) of the FLSA requires employers to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions of employment maintained by him," as prescribed by regulation of the Secretary. Under the regulations, employers must maintain accurate records of the hours worked each workday and hours worked each workweek by employees, as well as total wages paid each pay period. 29 C.F.R. § 516.2. The recordkeeping requirements of the Act are the cornerstone of wage and hour enforcement. The U.S. Supreme Court recognized the importance of accurate record keeping in the FLSA enforcement scheme and held that an employer's failure to maintain accurate records of hours actually worked or kept records that are inaccurate or inadequate shifts the burden of proof concerning back wage liability to the employer. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1945); *see also* Wirtz v. Turner, 330 F.2d 11 (7th Cir. 1964); U.S. Dep't of Labor v. Cole Enterprises, Inc., 62 F.3d 775, 780-81 (6th Cir. 1995).

> [W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act.

Mt. Clemens Pottery Co., 328 U.S. at 687.

### F. Defendants' Failure to Maintain Hours Worked and Pay Records Results in Their Bearing the Burden of Rebutting Inferences From Available Evidence.

Where an employer violates the record keeping provisions of the FLSA, the burden-shifting scheme set forth in the Supreme Court's Mt. Clemens Pottery Co. decision is well established. For any period in which the employer has failed to maintain accurate records as required by the Act, the Secretary's burden of proof as to the extent of any back wage liability is met by showing that work was performed which was not properly compensated and producing sufficient evidence to show the nature and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer either to come forward with precise evidence of the work performed or to rebut the reasonableness of the inference to be drawn from the Secretary's evidence. Mt. Clemens, 328 U.S. at 687-88; *see also* Wirtz v. Turner, 330 F.2d 11 (7th Cir. 1964); Herman v. Palo Group Foster Home, 183 F.3d 468, 472 (6th Cir. 1999); Brock v. Seto, 790 F.2d 1446 (9th Cir. 1986). The employer must not be allowed to profit from difficulties of proof created by his own misconduct. Mt. Clemens, 328 U.S. at 688. Evidence which provides a reasonable basis for inference of a "pattern or practice" concerning the actual hours worked is sufficient for approximation of a remedy which includes non-testifying employees. Martin v. Tony and Susan Alamo Foundation, 952 F.2d 1050 (8th Cir. 1992).

Defendants cannot meet their burden, under Mt. Clemens, "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the Secretary's evidence. Defendants admitted that they do not maintain any records of cash paid for work performed and dispose time records after the kitchen employees have been for the relative pay period. *Prop. Fact*

*Nos. 17, 22, 26, 27.* Furthermore, defendants admitted that they *continued* to fail to maintain pay and time records of kitchen employees even up to December 2010. *Prop. Fact Nos. 94— 96.* However, employees were able to provide their employment dates, days worked and days off, start and end times, pay rates, and pay methods. *Prop. Fact Nos. 39—7.* All five kitchen employees, not on the payroll, consistently stated that they worked in excess of 40 hours in a workweek, were paid their regular rate for all hours worked, were paid in cash without taxes taken out, and not provided end-of-the-year income tax documents. *Prop. Fact Nos. 39—71.* Wage and Hour used employee statements and transcribed the weeks, pay, and hours to calculate the unpaid half-time premium due. *Prop. Fact No. 88.* Thus, plaintiff has proven the nature and extent of the kitchen employees' uncompensated work. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." Mt. Clemens, 328 U.S. at 697—88. Defendants have admitted that they have neither records nor knowledge of the precise amount of work performed or compensation paid each workweek. *Prop. Fact Nos. 22—24, 29.*

  **G.**  **Plaintiff Is Entitled to Recover an Additional Amount Equal to the Amount of Unpaid Compensation, as Liquidated Damages.**

  Liquidated damages in an equal to the amount of back wages due employees is an appropriate remedy, under section 16(c) of the Act. 29 U.S.C. § 216(c). Under the FLSA, there is a strong presumption of double damages: "double damages are the norm, single damages the exception." Walton v. United Consumers Club, Inc., 786 F.2d 303, 310 (7th Cir. 1986); *see also* Martin v. Ind. Mich. Power Co., 381 F.3d 574, 585 (6th Cir. 2004) (referring to liquidated damages under the Act as "the norm" and "mandatory"). The purpose of liquidated damages is "not penal in its nature but compensation for the retention

of a workman's pay which might result in damages too obscure and difficult to prove other than by liquidated damages." Brooklyn Savings Bank v. O'Neill, 324 U.S. 697, 702 (1945); Elwell v. University Hospitals Home Care Services, 276 F.3d 832, 840 (6th Cir. 2002).

Liquidated damages compensate employees for the losses they may have suffered by reason of not receiving their proper wages at the time they were due. Overnight Motor Co. v. Missel, 316 U.S. 572, 583-84 (1942). The FLSA make liquidated damages mandatory, unless an employer proves it acted in good faith and reasonable belief. Shea v. Galaxie Lumber & Constr. Co., 152 F.3d 729, 733 (7th Cir. 1998); *see also* Bankston v. State of Illinois, 60 F.3d 1249, 1254 (7th Cir. 1995). During the prior investigation of compliance with the FLSA, defendants were provided several publications setting forth the Act's pay and record keeping requirements. During the instant investigation, defendants attempted to conceal the unlawful practices by not maintaining pay and time records of kitchen employees *Prop. Fact Nos. 17, 22, 26, 27*; instructed one employee to pretend he was another employee when he was interviewed by the investigator *Prop. Fact Nos. 44, 82*; instructed some employees to not punch in their actual hours worked *Prop. Fact Nos. 43, 52, 59*; and admitted to the investigator that he did not pay overtime to kitchen employees paid cash but then claimed that he paid time and a half for hours in excess of 40 in a workweek *Prop. Fact Nos. 36, 84*.

Furthermore, defendants have not submitted any facts during discovery to support an affirmative defense that they acted in good faith and reasonable belief that their conduct was in compliance with the pay and record keeping requirements of the FLSA. In response to the interrogatory requesting facts relating to their defenses merely identify three Sinani family members who "will testify as to the hours of work for each Mexican kitchen help and as to

16

their work shifts and job description." *Defs' 2d Suppl' Interrog. No. 7.* Further, defendants' document production response nos. 21 and 22 states "see payroll records to establish affirmative matters" when they also have admitted that they do not keep any payroll records or time records of the kitchen employees paid cash. Defendants knew that employers are required to pay half-time for hours in excess of 40 in a workweek. *Prop. Fact No. 97.*

### H. Defendants Should Be Enjoined From Prospectively Violating the Act.

District courts may enjoin violations of the pay provisions of the Act, pursuant to section 17 of the FLSA, 29 U.S.C. § 217. The Seventh Circuit has long held that an injunction should issue upon proof of FLSA violations, where no recognized mitigating factors appear or are represented. Walling v. National Ice and Fuel Corp., 158 F.2d 28 (7th Cir. 1946). "`In exercising its discretion, the court must give substantial weight to the fact that the Secretary seeks to vindicate a public, and not a private right.'" Martin v. Funtime Inc., 963 F.2d 110, 113 (6th Cir. 1992), *citing* Brock v. Big Bear Market No. 3, 825 F.2d. 1381, 1383 (9th Cir. 1987) *quoting* Marshall v. Chala Enterprises, Inc., 645 F.2d. 799, 804 (9th Cir. 1981). During the previous and present FLSA investigations, Sinani represented the restaurant and was provided publications on compliance with the FLSA. *Prop. Fact Nos. 78, 79.* Since the Wage and Hour investigation, defendants' failure to maintain pay and time records of kitchen employees continued until December 2010. *Prop. Fact Nos. 94—96.* Mitigating factors neither appear nor have been represented by defendants; therefore, an injunction is an appropriate remedy to ensure future compliance with the FLSA.

### CONCLUSION

The Secretary seeks entry of a finding that the defendants violated the minimum wage, overtime, and recordkeeping requirements of the FLSA; are liable for the

17
Case 2:09-cv-00954-JPS   Filed 12/29/10   Page 17 of 18   Document 30

uncompensated minimum wage and overtime premium, as well as liquidated damages in an equal amount; and that they be enjoined and restrained from violating said provisions of the FLSA. The Secretary respectfully requests that her motion for summary judgment be granted.

Respectfully submitted,

**M. PATRICIA SMITH**
Solicitor of Labor

**JOAN E. GESTRIN**
Regional Solicitor

s/ Linda J. Ringstad

U.S. Department of Labor     **LINDA J. RINGSTAD**
Office of the Solicitor     Attorney #6225795
230 South Dearborn Street, Rm. 844
Chicago, Illinois 60604     Attorney for **HILDA L. SOLIS**,
Telephone No.: (312) 353-3668     Secretary of Labor,
ringstad.linda@dol.gov     U.S. Department of Labor, Plaintiff